## DORSEY v. DORSEY.

No. 3169. Decided April 16, 1918. (172 Pac. 722.)

1. DIVORCE—CUSTODY OF CHILDREN—STATUTES. Comp. Laws 1907, section 1212, as amended by Laws 1909, c. 109, section 4, providing that if a divorce is granted, and any child has attained the age of ten years, such child, if of sound mind, may choose the parent with whom he shall live, is not conclusive as to the question of custody and control, and, if for the best interest of the child, the court may nevertheless determine the child's custody otherwise. (Page 77.)

2. DIVORCE—CUSTODY OF CHILD—MORAL FITNESS—EVIDENCE. In divorce proceedings, where the custody of an eleven year old child was awarded the husband, although the child preferred the mother, and the husband stipulated that she was a fit person to have its custody, evidence held not to justify a finding that the mother was morally unfit. (Page 78.)

Appeal from District Court of Weber County, Second District; *Hon. A. W. Agee*, Judge.

Suit by Russel B. Dorsey against Florence V. Dorsey for divorce.

Judgment for plaintiff. Defendant appeals.

REVERSED and remanded, with directions.

*Chez & Stine* for appellant.

*Howell & Wright* for respondent.

FRICK, C. J.

The plaintiff commenced this action in the district court of Weber County to obtain a divorce from the defendant upon the ground of extreme cruelty. The acts of cruelty are set forth at great length in the complaint, and are largely based on defendant's conduct with other men, and especially with one Robert H. Gray, in going to dances and other places of amusement with him against the wish and without the consent of the plaintiff. The complaint was filed on the 10th day of February, 1917, and on the 19th, within nine days after the same was filed, plaintiff and defendant entered into a stipulation, signed by them personally and by counsel, whereby it was agreed that, in case the court should grant plaintiff a divorce, the defendant shall receive certain household furniture and that she waived all other claims for alimony. It was further stipulated that the defendant should have the care, custody, and control of the minor child, a little girl eleven years of age, the fruit of the marriage between plaintiff and defendant, and that the plaintiff shall pay to the defendant "the sum of fifteen dollars per month for the support, care, maintenance, and education" of said minor child. It seems the child elected to live with her mother, a right she had under our statute. It was therefore stipulated that the plaintiff should have the right to visit said child, and she should have the right to visit him "at all reasonable times." The plaintiff also agreed to pay the defendant twenty-five dollars as attorney's fees.

Upon the foregoing stipulation being filed, the defendant did not answer the complaint and did not further appear in the action. In due time the plaintiff presented his evidence

to the court, from which it is made to appear that for a number of years he had been, and at the time of the hearing was, employed in the United States mail train service; that for some time he and the defendant lived at Los Angeles, and thereafter for a time at Oakland, Cal. More than a year immediately preceding the commencement of the action, however, they had lived at Ogden, Utah. During all of the time aforesaid he was employed in the government mail service upon trains, and was away from home much of the time, both day and night. It also was made to appear that the defendant, like most females, was naturally gregarious and was fond of society, and that she and plaintiff, when he was at home, at times attended dances, and at times, when he was away from home, she attended some private and perhaps one or two other dances, but always with plaintiff's knowledge; that is, she informed him that she was going and with whom she was going, except perhaps in one or two instances. It was also shown that during the last few months before the bringing of the action one Robert H. Gray, who was also in the government mail service, and who was working with plaintiff, paid considerable attention to the defendant, and she seemed to become unduly friendly with him. She attended a Knights of Pythias dance with him and also one called the ''Telephone Girls'' dance. She also came to Salt Lake City from Ogden one night with Gray and a young man and his companion, a young girl, and a Mrs. Stead, in the young man's automobile. The testimony produced by plaintiff, however, showed that the five persons were always together from the time they left Ogden until they again returned there, and that nothing out of the usual transpired. While there is much evidence from which one may readily conclude that the defendant was indiscreet, indeed on one or two occasions very indiscreet, yet there is nothing in the record which justifies a finding that she was guilty of any criminal act. Indeed, the trial court conceded that the evidence was not such as would convict her of criminal conduct. After a careful reading of the record, one becomes impressed with the fact that the defendant was prompted to do some of the things of which she is accused merely to provoke

and to defy her husband.   One of plaintiff's witnesses, who boarded and lived with plaintiff and the defendant some time before they moved to Ogden, and who came in touch with them while they lived there, testified that he never saw anything indicating any wrongdoing on the part of the defendant.

We can readily understand why, after the stipulation was entered into between plaintiff and defendant, she paid no further attention to the action.   As is usual in ex parte hearings, one gets merely the views of the complaining party.   It is also true, as all lawyers and judges well know, that in a family quarrel the conduct and acts of the spouse that is deemed in fault are unduly, and sometimes without adequate foundation, magnified and distorted.   This case is perhaps no exception to that rule.   If in this case there had been a vigorous cross-examination of the plaintiff and his witnesses, and if they would have been required to give a strict account of what they knew, and to give the source of their statements, and if such cross-examination had been supplemented by defendant's version of the acts of which she is accused and of her conduct, the conclusions that could legitimately be deduced from the whole evidence might be quite different.   That such is the case, we think, is reflected from plaintiff's own conduct. Witnesses were called who testified that he was a man of exemplary moral character, and the court so found.   If, therefore, he had believed that the defendant was an immoral woman he would not have stipulated that his only child should remain in her care, custody, and control.   The plaintiff evidently believed her to be a fit person to have the care and custody of his only child.   Notwithstanding the stipulation, however, and that the evidence respecting the defendant's moral fitness to rear her own child is, to say the least, merely conjectural, and not satisfactory, the court not only refused to follow the stipulation, but made a finding ''that said defendant is an immoral and otherwise incompetent and improper person to have the care, custody, and control of said   *   *   * minor child.''

After the stipulation was entered into and filed, and while the action was pending, the defendant left Ogden, and she

and the child went to her old home at Quincy, Ill:, where she and plaintiff were married in 1904, and from whence they came west for the purpose before stated. Defendant is now employed in Quincy, and is supporting herself by her own labor, and is caring for the child with the fifteen dollars the plaintiff is sending from month to month. The little girl is attending school there. It was also made to appear that in view that the plaintiff is employed in the United States mail train service, and thus being away from home much of the time both day and night, and therefore not able to maintain a home, he was not and is not prepared to take the custody of the child, which the court had awarded to him, even though she were here. The court, in entering the interlocutory decree of divorce, therefore, made the order awarding the custody of the child to the plaintiff, but made a further order that she be placed in the immediate care and charge of plaintiff's mother, who lives on a farm near a town called Perry, in the state of Illinois. After the court made the foregoing finding respecting defendant's moral unfitness, and after refusing to follow the stipulation respecting the custody of the child, and after the defendant was made aware of the court's finding and order, she appealed from the order or judgment, and now insists that the court erred in its findings of facts and conclusions of law in the particular before stated. Indeed, defendant insists that the court erred in its findings in other particulars. We are, however, not disposed to enter upon a review of the findings, except the one which relates to defendant's moral unfitness to have the care, custody, and control of the little girl.

While our statute (Comp. Laws 1907, section 1212, as amended by chapter 109, Laws Utah 1909, p. 231) provides that in case the court grants a divorce, and any child, the fruit of the marriage, has attained the age of ten years, such child, if of sound mind, shall have the privilege of choosing the parent with whom he shall live; and while in this case the little girl selected her mother, yet in our judgment the statute is not conclusive upon the question of custody and control. We think in case the parent the child selects is found to be an immoral or unfit person to have the care and

custody of the child, and the court finds it to be for the best interests of the child, that the court may, nevertheless, determine the child's custody otherwise. We are of the opinion, however, that in case the parents agree upon which one should have the custody of their only child, who is a female, and it is found that the husband is a good moral man and is willing that his wife shall have the care, custody, and control of their child, then the court should follow the stipulation of the parties, unless the evidence is strong and convincing that the mother is morally unfit to have the care and custody of her own child. As we have hereinbefore stated the evidence shows the defendant to have been quite indiscreet at times. It must, however, not be overlooked that she was a young woman of perhaps twenty-eight years of age, full of life and vigor; that her husband was necessarily away from home much of the time, and thus could not always respond to her inherent desire for social contact or to mingle with others. It is easy to understand that the young man Gray thus afforded her an opportunity to go and mingle with others from time to time, and that she willingly embraced the opportunity. Notwithstanding all this, however, there is absolutely no proof that she was guilty of any criminal act or conduct. Apart from the foregoing evidence of being indiscreet, there is not a word of evidence why she should be deprived of the care, custody, control, and companionship of her little girl. Indeed, the husband, who knew her better than any one else, not only stipulated before the hearing that the defendant was a fit and proper person to have the care and custody of their offspring, but since this case has been appealed to this court he has again most solemnly stipulated that the defendant is morally and in every other way a fit and proper person to have the care, custody, and control of the child, and that she is taking good and proper care of it, and that he consents and desires that the decree be modified in that respect, and that the defendant be awarded the care, custody, and control of said child.

While, as before stated, we are of the opinion that the best interests of the child should be the guiding and controlling factor in determining its custody, yet the mere fact        2

that the court may be justified in finding from the evidence that the mother has attended dances with others than her husband, and at times has been guilty of conduct which does not square with the court's standard of morality, is hardly sufficient to justify a finding that the mother is an immoral person, and otherwise unfit to have the care, custody, and control of her own little girl; and especially is such the case where, as here, the father of the girl, who, the court finds, is a man of exemplary moral character, has twice stipulated that the mother shall have the care and custody of his child, and that she, morally and otherwise, is a fit person to rear her. If the father is willing to trust his divorced wife with the child's custody, the court, except for the strongest reasons, should not set itself up as a moral censor; and especially not where, as under our statute, the court may at any time, upon good cause being shown, change the custody of the child. Moreover, after reading the evidence, we are of the opinion that the finding of the court "that the defendant is an immoral and otherwise incompetent and improper person to have the care, custody, and control of said child" is, under the circumstances, not supported by the evidence. Actions for divorce are equitable in the highest sense, and while even in those actions we do not interfere with the trial court's findings in case the evidence is conflicting, or where the findings are not clearly against the evidence, under the circumstances of this case, we are very loath to permit the finding to stand that a mother is an immoral and unfit person to have the care, custody, and companionship of her own offspring unless the evidence clearly merits such a finding. Findings of courts are solemn things, and where the moral character of a mother is involved courts should be careful not to permit their own moral standards to betray them into condemning a mother except on good and sufficient evidence. In view, therefore, of the meagerness of the evidence, and in view that it conclusively appears that the plaintiff, the father of the child, desires that she be and remain with her mother, the findings of the court and the decree are disapproved, and the cause is remanded to the district court of Weber County, with directions

to set aside the finding and conclusion "that the defendant is an immoral and otherwise incompetent and improper person to have the care, custody, and control of the said Hazel Juanetta Dorsey, the minor child of the plaintiff and defendant," and substitute therefor a finding that the defendant is not an immoral or incompetent or unfit person to have the care, custody, and control of said minor child, and that she be awarded the care, custody, and control of said child as stipulated by the plaintiff and the defendant. It is further ordered that the said court amend its conclusions of law, and enter a decree to conform to the foregoing directions of this court. Defendant is awarded her costs on this appeal.

McCARTY, CORFMAN, THURMAN and GIDEON, JJ., concur.